In re ALLEN CARE CENTERS, INC.,
an Oregon corporation, Debtor.

Ronald G. WITCOSKY, Trustee,
Plaintiff–Appellee,

v.

CLINICAL OPTIONS, INC.,
Defendant–Appellant.

No. CV 94–1507–RE.
Bankruptcy No. 390–36679–P7.
Adv. No. 94–3198.

United States District Court,
D. Oregon.

Feb. 23, 1995.
Order Amending Decision April 7, 1995.

Linda Johannsen, Ater Wynne Hewitt Dodson & Skerritt, Portland, OR, for plaintiff-appellee Ronald G. Witcosky, Trustee.

Charles R. Bowers, Delo & Bowers and J. Patrick O'Malley, O'Malley & Antell, Portland, OR, for defendant-appellant Clinical Options, Inc.

## OPINION

REDDEN, District Judge:

Clinical Options, Inc. (Clinical) appeals the decision of the bankruptcy court denying Clinical's motion to dismiss. For the reasons that follow, the bankruptcy court's decision is affirmed.

## BACKGROUND

Allen Care Centers filed a Chapter 11 bankruptcy petition on December 10, 1990. A trustee was not appointed until October 2, 1992. The Trustee, Ronald G. Witcosky, filed this action against Clinical on April 20, 1994, within two years of the Trustee's appointment, but after two years from the date the bankruptcy petition was filed.

## BANKRUPTCY COURT'S DECISION

Without written opinion, Bankruptcy Judge Elizabeth Perris denied Clinical's motion to dismiss and held that the Trustee's claim was timely because the two-year statute of limitations contained in 11 U.S.C. § 546(a) began to run when the Trustee was appointed. This court granted Clinical's mo-

tion to file an interlocutory appeal from the bankruptcy court's decision.

## STANDARD FOR REVIEW

■ The bankruptcy court's decision is based purely upon conclusions of law and, therefore, is reviewed *de novo*. *In re San Joaquin Roast Beef,* 7 F.3d 1413, 1414 (9th Cir.1993).

## DISCUSSION

■ The crux of this appeal is the interpretation of two Ninth Circuit cases: *In re Softwaire Centre,* 994 F.2d 682 (9th Cir. 1993), and *In re San Joaquin Roast Beef,* 7 F.3d 1413 (9th Cir.1993).

In *Softwaire Centre,* where a trustee was never appointed, the Ninth Circuit held that the two-year statute of limitations of 11 U.S.C. § 546(a) ran against a debtor in possession. *Softwaire Centre,* 994 F.2d at 683. That section states that actions "may not be commenced after the earlier of 1) two years after the appointment of a trustee ... or 2) the time the case is closed or dismissed." 11 U.S.C. § 546(a). The court relied on the Tenth Circuit's decision in *Zilkha Energy Co. v. Leighton,* 920 F.2d 1520 (10th Cir.1990), and concluded that because a debtor in possession was the "functional equivalent of a trustee," the statute of limitations began to run against the debtor in possession on the date of the bankruptcy filing. *Softwaire Centre,* 994 F.2d at 683.

One month later, the Ninth Circuit held that the limitations period in 11 U.S.C. § 546(a) began to run upon the appointment of the first bankruptcy trustee, and that the appointment of a subsequent trustee did not begin a new limitations period. *San Joaquin Roast Beef,* 7 F.3d at 1415–16.

Clinical argues that because the debtor in possession is the functional equivalent of a trustee under *Softwaire Centre,* the limitations period began to run with the bankruptcy filing, not the subsequent appointment of the Trustee. The Trustee, on the other hand, relies on *San Joaquin Roast Beef* to argue that, in a case were a trustee is appointed, no limitations period begins to run until the appointment of the trustee. It con-

tends that *Softwaire Centre* is only applicable where a trustee is never appointed.

While the Ninth Circuit has not squarely ruled on these arguments, bankruptcy and district courts in the Ninth Circuit and elsewhere have. The majority of courts have held that under the plain language of § 546(a) the limitations period does not begin to run until the trustee is appointed. *See, e.g., In re Iron–Oak Supply,* 162 B.R. 301 (Bankr.E.D.Cal.1993); *In re California Canners & Growers,* 175 B.R. 346 (9th Cir. BAP 1994); *In re Luria Steel,* 168 B.R. 913 (Bankr.N.D.Ill.1994). Under these rulings, a trustee has two years from the date he is appointed to bring actions.

A minority of courts have held that, under *San Joaquin Roast Beef* and *Softwaire Centre,* the limitations period is not affected by the subsequent appointment of a trustee. *See In re EPI Products,* 162 B.R. 1 (Bankr.C.D.Calif.1993); *In re Sahuaro Petroleum,* 170 B.R. 689 (C.D.Calif.1994). Under this rule, the interests of the trustee and the debtor are perceived to be identical and, therefore, all claims must be filed within two years of the bankruptcy filing.

Contrary to the Clinical's argument, *Softwaire Centre* and *San Joaquin Roast Beef* cannot simply be read together to reach the conclusion that the debtor in possession is a *de facto* trustee when a trustee is subsequently appointed.

First, the plain language of § 546(a) supports the conclusion that the limitations period begins to run when the trustee is appointed. *See* 11 U.S.C. § 546(a) ("two years after the appointment of a trustee").

Second, *Softwaire Centre,* while speaking broadly of a debtor in possession's "functional equivalency" to a trustee, is limited to cases where no trustee is ever appointed. *See In re Luria Steel,* 168 B.R. at 914–15. The court in *Softwaire Centre,* in considering the language of § 546(a), stated "[h]ere the case has not been closed or dismissed, *nor has a trustee been appointed." Softwaire Centre,* 994 F.2d at 683 (emphasis added). The case from which *Softwaire Centre* quotes and heavily relies upon, *Zilkha,* also stated,

[w]e take no position on whether a subsequent appointment of a trustee in a chapter 11 case would change the analysis. While we perceive that to be a distinguishable circumstance requiring a different analysis, we leave the issue for a case in which that situation arises.

*Zilkha,* 920 F.2d at 1524 n. 11. Therefore, *Softwaire Centre* is not controlling in this case and its reasoning must be limited to its facts.

In addition, the court in *Softwaire Centre* was confronted with a situation where a contrary holding would have meant that a debtor in possession was bound by no limitations period. In cases such as this where a trustee is appointed, the limitations period will run no longer than two years from the appointment.

Third, *San Joaquin Roast Beef* is factually indistinguishable from this case. In both instances, a trustee was appointed following the approximately 10–month tenure of a debtor in possession. The Ninth Circuit nonetheless held that the limitations period did not begin to run under the plain meaning of § 546(a) until the trustee was appointed. *San Joaquin Roast Beef,* 7 F.3d at 1415–16.

If Clinical's argument were correct, the court in *San Joaquin Roast Beef* would have held that the limitations period began running when the case was filed and that the claim was barred. To the contrary, the court in *San Joaquin Roast Beef* held that a trustee is allowed two years from his appointment to file actions. Unlike *Softwaire Centre,* the *San Joaquin Roast Beef* debtor in possession was not considered to be a *de facto* trustee. In light of the indistinguishable facts here, the same result follows.

■ Fourth, while a debtor in possession is the "functional equivalent" of a trustee in the context where no trustee is ever appointed under *Softwaire Centre,* the same is not true when a trustee is appointed. A debtor in possession may lack the incentive to prosecute claims. *In re California Canners & Growers,* 175 B.R. at 348. Commencement of the limitations period upon appointment of the trustee allows him to investigate claims and evaluate the earlier actions of the debtor in possession. *In re Luria Steel,* 168 B.R. at 917.

Clinical also relies upon a recent legislative change to § 546(a). While the change is not retroactive, Clinical argues that the legislative history helps interpret the meaning of the section.

Under the new provision, the limitations period expires two years from the filing of the bankruptcy petition or one year following the appointment of the trustee (if appointed within the two-year period), whichever is later. This action would have been barred under the new law.

Statements by Congressmen and Senators in the record shed little light on the proper interpretation of the original § 546 and Representative Brooks stated that "[a]doption of this change is not intended to create any negative inference or implication regarding the status of current law or interpretations of section 546(a)(1)."

While the legislative history does not provide strong support for either side, the change in law does suggest that Congress, while shortening the limitations period in some instances, sought to preserve *some* period of time for the trustee to bring actions. Under Clinical's approach and the minority rule, no period of time to bring actions was ever guaranteed a trustee.

## CONCLUSION

The bankruptcy court's order is affirmed.

## ORDER AMENDING DECISION

Appellant moves to amend this court's order and judgment to allow an interlocutory appeal to the Ninth Circuit Court of Appeals. Appellee has filed no objection.

■ In determining whether an interlocutory appeal could be taken by appellant from the bankruptcy court, this court found that the appeal involved a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal might materially advance the ultimate termination of this case. *See* 28 U.S.C. § 1292(b). I adhere to that conclusion.

Appellant's motion to amend the order and judgment (doc. # 48) is GRANTED.

IT IS SO ORDERED.